AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

Southern District of _____ Ohio _____

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 2:20 mj-646 |
| | ) |
| | ) |
| | ) |
| Demetrius TROUTMAN | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ 06/29/2020 _____ in the county of _____ Franklin _____ in the

_____ Southern _____ District of _____ Ohio _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to distribute and possess more than 400 grams of Fentanyl |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

_Barry J. O'Dell_
*Complainant's signature*

DEA Task Force Officer Barry J. O'Dell
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 9-25-20 _____

_Judge's signature_

City and state: _____ Columbus, Ohio _____

Chelsea Vascura U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA      )
                                      )
   v.                          )     Magistrate No.
                                        )
NORBERTO CASTILLO-LOPEZ     )
DEMETRIUS TROUTMAN          )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Barry J. O'Dell, Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn depose and state:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint that from in and around June of 2020, and continuing thereafter to in and around September of 2020, in the Southern District of Ohio and elsewhere, Norberto CASTILLO-LOPEZ ("LOPEZ") and Demetrius TROUTMAN ("TROUTMAN"), did knowingly, intentionally and unlawfully conspire with one another and with persons both known and unknown, to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2- phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi) and in violation of Title 21, United States Code, Section 846.

2.    I am an "Investigative or Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.      Your affiant is currently a Police Officer with the City of Columbus Division of Police assigned as a Detective in the Columbus Police Narcotics Bureau, and is concurrently serving with the Drug Enforcement Administration Task Force.  Your affiant has been a police officer in good standing since July 8, 2001. As a result of his training and experience as a Police Officer and Detective, your affiant is familiar with Ohio Revised Code Criminal laws relating to narcotics                                                                                                 violations.

a.  I am a Task Force Officer of the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office. I graduated from the Columbus Police Academy located in Columbus, Ohio.  I have received approximately 29 weeks of training to be a police officer.  The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

(b) During the course of my law enforcement career, I have had experience in debriefing defendants; interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution and concealment of records and proceeds of trafficking in controlled substances.

2

(c) As a Task Force Officer, I have participated in the execution of numerous search warrants at residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous search warrants and investigations for drug related offenses.

(d) As a Task Force Officer, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, fentanyl and its analogues, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801and ORC 2925. I know that these are controlled substances under 21 U.S.C. § 801and ORC 2925.

4.    Based on the facts set forth in this Affidavit, I submit there is probable cause to believe that LOPEZ and TROUTMAN have committed violations of Title 21 Sections 841(a)(1) 841(b)(1)(A)(vi), and 846, knowingly, intentionally and unlawfully conspiring to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2- phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance. Because this Affidavit is being submitted for the limited and specific purpose of establishing probable cause to support a Criminal Complaint, I have not included every fact known to law enforcement concerning this investigation. I have not, however, omitted any facts that would tend to defeat a finding of probable cause.

## II.    PROBABLE CAUSE

5.    On June 22, 2020, the Honorable Nora Barry Fischer, Senior United States District Judge for the Western District of Pennsylvania, issued Orders authorizing the initial interception

3

of wire and electronic communications over telephone number 717-398-5454, utilized by LOPEZ, in the Western District of Pennsylvania. See Western District of Pennsylvania Misc. No. 19-1283(g). On July 16, 2020, the Honorable Nora Barry Fischer, Senior United States District Judge for the Western District of Pennsylvania, issued Orders authorizing the continued interception of wire and electronic communications over telephone number 717-398-5454, utilized by LOPEZ, and the initial interception of wire and electronic communications over telephone number 614-753-8524, utilized by TROUTMAN, in the Western District of Pennsylvania. See Western District of Pennsylvania Misc. No. 19-1283(h). Investigators also discovered that LOPEZ utilized telephone number 717-357-7761.

6. On June 28, 2020, between approximately 9:44 p.m. and approximately 10:05 p.m., TROUTMAN exchanged a series of text messages over telephone number 614-753-8524 with telephone number 717-398-5454, utilized by LOPEZ. Below is a transcription of the text messages TROUTMAN ("DT") and LOPEZ ("NL") exchanged:

> DT: "What's up with the F they should've been back in town"
>
> NL: "Wey still out of town"

7. Based upon my training, knowledge, and experience as well as the context of these text messages, I believe that TROUTMAN texted LOPEZ and asked LOPEZ when LOPEZ could supply TROUTMAN with fentanyl. LOPEZ responded that LOPEZ had not been resupplied with fentanyl.

8. On June 29, 2020 between approximately 7:10 a.m. and approximately 2:23 p.m., TROUTMAN exchanged a series of text messages over telephone number 614-753-8524 with telephone number 717-398-5454, utilized by LOPEZ. Below is a transcription of the text messages TROUTMAN ("DT") and LOPEZ ("NL") exchanged:

> NL: "There's 3 whole ones in halfs"

4

DT:     "what kind of deal can I get for going to get them"

NL:     "And this one are going b 42 because it's way better than the other"

DT:     "Okay let me ask him"

DT:     "He said let him think about it"

DT:     "Are you sure it's way better how much better"

NL:     "Much better u going to see"

NL:     "Dude I need 6 k tomorrow when I give you the f"

9.      Based upon my training, knowledge, and experience; the previous text messages LOPEZ and TROUTMAN exchanged; and the context of these text messages, I believe that LOPEZ texted TROUTMAN and confirmed that LOPEZ intended to supply TROUTMAN with three kilograms of fentanyl that were packaged in half-kilogram quantities. LOPEZ informed TROUTMAN that each kilogram of fentanyl would cost $42,000 because the quality of the fentanyl was of higher quality than the fentanyl that LOPEZ previously supplied to TROUTMAN. TROUTMAN advised LOPEZ that TROUTMAN would contact TROUTMAN's associate to determine whether TROUTMAN's associate desired to purchase the fentanyl. LOPEZ affirmed. TROUTMAN then informed LOPEZ that TROUTMAN's associate needed to "think about it." LOPEZ responded that TROUTMAN must supply LOPEZ with $6,000 that TROUTMAN owed to LOPEZ for a previous drug transaction when LOPEZ supplied TROUTMAN the fentanyl the following day.

10.     On June 30, 2020 at approximately 1:22 p.m., LOPEZ placed an outgoing voice call from telephone number 717-398-5454 to TROUTMAN on telephone number 614-753-8524. Below is a transcription of the conversation between LOPEZ ("NL") and TROUTMAN ("DT"):

NL:     "Hello?"

DT:     "Hello? Yeah?"

5

> NL:   "He's outside. Just open the door."
>
> DT:   "Go open it now."

11.    Based upon my training, knowledge, and experience; the previous text messages LOPEZ and TROUTMAN exchanged; and the context of this conversation; I believe that LOPEZ called TROUTMAN and informed TROUTMAN that LOPEZ's associate was at TROUTMAN's residence with the three kilograms of fentanyl. TROUTMAN affirmed.

12.    Approximately one minute later at approximately 1:23 p.m., LOPEZ placed an outgoing voice call from telephone number 717-398-5454 to TROUTMAN on telephone number 614-753-8524.  Below is a transcription of the conversation between LOPEZ ("NL") and TROUTMAN ("DT"):

> DT:   "Hello?"
>
> NL:   "Hey man."
>
> DT:   "Yes?"
>
> NL:   "There is uh, there is three whole ones they came in halves."
>
> DT:   "Okay."
>
> NL:   "So just take uh, two and a half and, he going to take half for somebody else.  And just take one for you, and the other just keep it."
>
> DT:   "And put it up for you?"
>
> NL:   "Yeah."
>
> DT:   "Okay."
>
> [Voices Overlap]
>
> NL:   "So let me uh."
>
> DT:   "Alright."
>
> NL:   "Why, you already see him?"
>
> DT:   "Yeah he's climbing, he's climbing into the truck.  He's crazy."

6

> NL:    "Okay. So. Just take the five, five pieces and he will take one."
>
> DT:    "Okay."
>
> NL:    "Alright man."

13.    Based upon my training, knowledge, and experience; the previous communications between LOPEZ and TROUTMAN; and the context of this conversation; I believe that LOPEZ called TROUTMAN and informed TROUTMAN that the quantity of the fentanyl that LOPEZ's associate delivered to TROUTMAN was three kilograms separated into six packages containing half of a kilogram per package. LOPEZ instructed TROUTMAN to take two-and-a-half packages and put them aside for LOPEZ. LOPEZ further advised TROUTMAN to keep one package for himself. LOPEZ informed TROUTMAN that LOPEZ's associate would take half of a kilogram. TROUTMAN affirmed. LOPEZ asked TROUTMAN if TROUTMAN obtained the fentanyl from LOPEZ's associate, and TROUTMAN responded that TROUTMAN received the fentanyl.

14.    On July 21, 2020 at approximately 12:40 p.m., TROUTMAN received an incoming call over telephone 614-753-8524 number from telephone number 717-357-7761, utilized by LOPEZ. Below is a transcription of the conversation between TROUTMAN ("DT") and LOPEZ ("NL"):

> DT:    "Hello?"
>
> NL:    "Hey, man. He's outside."
>
> DT:    "Well, my bro is on the way back."
>
> NL:    "Okay. Just, just tell them just wait, wait like a little bit, you know?"
>
> DT:    "Alright."
>
> NL:    "Alright. [Aside: He said there is one piece left]. Open the door."

15.    Based upon my training, knowledge, experience; the previous communications between TROUTMAN and LOPEZ; and the context of this conversation, I believe that LOPEZ

7

sent LOPEZ's associate to TROUTMAN's residence, located at 63 Midland Avenue, Columbus, Ohio 43223, to supply TROUTMAN with fentanyl. LOPEZ advised TROUTMAN that LOPEZ's associate had arrived at TROUTMAN's residence to supply TROUTMAN with fentanyl and instructed TROUTMAN to open the door t TROUTMAN's residence.

16. Approximately six minutes later at approximately 12:46 p.m., TROUTMAN placed an outgoing call from telephone number 614-753-8524 to telephone number 717-357-7761, utilized by LOPEZ. Below is a transcription of the conversation between TROUTMAN ("DT") and LOPEZ ("NL"):

NL: "Hey."

DT: "Hey, I didn't see nobody out there."

NL: "He's out there. Let me uh, let me call him real quick."

DT: "Hey you sure it's going to be a week though?"

NL: "Yeah man, just tell him, trust me I won't do nothing wrong. You know?"

DT: "Oh I know, I was just asking."

NL: "He uh..."

[Voices Overlap]

DT: "Hey uh, don't get the gray stuff again."

[Voices Overlap]

[Phone rings in the background]

UM: [Background: "Hello."]

NL: "Oh, no, no, no I won't, I won't get that shit again man. For sure."

DT: "Hey they're not going to take it and mix it, are they?"

UM: [Background: "Hello."]

[NL talks aside on another line]

8

NL:     "No." [Aside: "Hey Cousin."]

UM:     [Background: "What?"]

NL:     [Aside: "Is that the guy is there, he is getting close to the door."]

UM:     [Background: "Oh okay, I'm going."]

NL:     [Aside: "The one of the first address that I sent you."]

[Voices Overlap]

DT:     "Okay, I'm about to go…I'm going back to the door now."

[Voices Overlap]

UM:     [Background: "The door that is like glass, right?"]

NL:     [Aside: "Yes, the door that is is like, the door that is like a mirror?"]

UM:     [Background: "Oh, yes, yes."]

NL:     [Aside: "Okay it is set."]

[Voices Overlap]

DT:     "Hey, I'm going back to the door, you hear me?"

NL:     "Okay."

DT:     "Okay."

17.     Based upon my training, knowledge, and experience; the previous conversation between TROUTMAN and LOPEZ; and the context of this conversation, I believe that TROUTMAN called LOPEZ and advised LOPEZ that TROUTMAN did not see LOPEZ's associate at TROUTMAN's residence. TROUTMAN also informed LOPEZ that TROUTMAN did not desire to purchase the fentanyl that LOPEZ previously supplied to TROUTMAN ("the gray stuff"). TROUTMAN affirmed. Contemporaneously, LOPEZ called LOPEZ's associate to aid LOPEZ's associate in locating TROUTMAN's residence. LOPEZ advised LOPEZ's associate that LOPEZ provided LOPEZ's associate with the address to TROUTMAN's residence. LOPEZ's

further advised that the front door to TROUTMAN's residence was "like a mirror." LOPEZ's associate affirmed. The front door to TROUTMAN's residence has a reflective exterior that reflects the image of the residence across the street. TROUTMAN then advised LOPEZ that TROUTMAN would return to TROUTMAN's door to let LOPEZ's associate inside of TROUTMAN's residence. Thus, I believe that LOPEZ's associate ultimately supplied TROUTMAN with fentanyl at TROUTMAN's residence.

## III.  CONCLUSION

18.  Based upon my training, knowledge, experience, and the foregoing facts, I believe probable cause exists that from in and around June of 2020, and continuing thereafter to in and around September of 2020, in the Southern District of Ohio and elsewhere, Norberto CASTILLO-LOPEZ ("LOPEZ") and Demetrius TROUTMAN ("TROUTMAN"), did knowingly, intentionally and unlawfully conspire with one another and with persons both known and unknown, to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2- phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi) and in violation of Title 21, United States Code, Section 846.

The above information is true and correct to the best of my knowledge, information and belief.

_Barry J. O'Dell_
Barry J. O'Dell
Task Force Officer
Drug Enforcement Administration

Sworn to before me by *telephone*, pursuant to Fed. R. Crim. P. 4.1(b)(2)(A), this 24th day

10

of September, 2020.

_____
The Honorable Chelsea Vascura
United States Magistrate Judge
Southern District of Ohio